## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EMANUEL NIKOLAOS MPRAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2014 -cv- 00220 (TSC) |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Before the Court is the District of Columbia's Motion to Dismiss Plaintiff's Complaint (ECF No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Emanuel Nikolaos Mpras's Opposition (ECF No. 7), and the District's Reply (ECF No. 8). Upon consideration of the briefing and for the reasons that follow, the Court grants Defendant's Motion.

## I.    BACKGROUND

Plaintiff Mpras filed a four-count Complaint under 42 U.S.C. § 1983, alleging deprivation of a property interest, deprivation of a liberty interest, deprivation of equal protection under the law, and defamation *per se*. The first three of Mpras's counts are based on his allegation that the District wrongfully deprived him of the photographic identification referred to in subsection (d) of the Law Enforcement Officer's Safety Act (the "LEOSA"), codified at 18 U.S.C. § 926C. (ECF No. 1, Compl. ¶¶ 22; 29; 33). In his fourth count, for defamation, Mpras alleges that the District maintains false information in its official records concerning Mpras's employment, that the District has

1

"transmitted such false information" concerning his "fitness for employment as a law enforcement officer" to third parties, and in doing so, "directly and proximately injured the Plaintiff in his profession" and "wrongfully impede[s] and prevent[s] the Plaintiff's future employment as a law enforcement officer." (*Id.* ¶¶ 36–40).

Additionally, Mpras seeks relief under 28 U.S.C. § 2201(a) in the form of a declaration that the District's failure to issue him the photographic identification card "and the attendant immunities of the [LEOSA]" is unlawful, and an injunction ordering the District to provide him such a card. (*Id.* ¶¶ 41–43). Lastly, Mpras seeks monetary and punitive damages.

LEOSA provides in pertinent part:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce . . . .

18 U.S.C. § 926C(a). In order to meet the identification requirements of subsection (d), retired law enforcement officers must possess:

> (1) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer and indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm; or

> (2)(A) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer; and

> (B) a certification issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State that indicates that the individual has, not less than 1 year before the date the individual is carrying the concealed firearm, been tested or

otherwise found by the State or a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State to have met—

    (I) the active duty standards for qualification in firearms training, as established by the State, to carry a firearm of the same type as the concealed firearm; or

    (II) if the State has not established such standards, standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm.

*Id*. § 926C(d).  In sum, LEOSA allows a "qualified retired law enforcement officer" who possesses photographic identification that meets the requirements of subsection (d) to carry a concealed firearm notwithstanding any other provision of the law of any state or political subdivision thereof.

Mpras alleges that the District of Columbia Metropolitan Police Department ("MPD") "has established procedures for establishing eligibility [for] and the issuance of photographic identification for all qualified former [MPD] officers in furtherance of the [LEOSA]."  (Compl. ¶ 21).  However, Mpras has not identified what these procedures are, nor has he cited any authority wherein they appear.  The only statute or regulation cited in his Complaint is LEOSA.  (*Id*. ¶ 9).

Mpras's Complaint demonstrates what appears to be a fundamental misunderstanding of the operation of LEOSA.  Mpras claims that "a police officer" who meets the seven qualifications he lists in paragraph nine of the Complaint[1] "may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, notwithstanding any other provision of the law of any State or any political subdivision thereof, subject to some additional other limitations not applicable herein."  (*Id*.).  That is, Mpras alleges that an officer who meets the qualifications he lists is entitled to carry a concealed firearm.  This is an incorrect reading of the statute.  LEOSA requires that one

---

[1] The seven elements Mpras lists in his Complaint appear to track those of § 926C(c), which defines a "qualified retired law enforcement officer," although Mpras omitted the last element of § 926C(c)(7):  "is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance . . . ."

must be a "qualified retired law enforcement officer" under § 926C(c) *and* possess a photographic

identification in the form recognized by § 926C(d) in order to obtain the right Congress conferred in

§ 926C(a).

## II.    LEGAL STANDARD

"In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of

the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts

alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United

States,* 617 F.2d 605, 608 (D.C. Cir. 1979)).  The plaintiff's factual allegations are assumed to be

true and must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that "are no more than conclusions, are not entitled

to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While Federal Rule of

Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader

is entitled to relief . . . it does not unlock the doors of discovery for a plaintiff armed with nothing

more than conclusions." *Iqbal*, 556 U.S. 662, 678–79 (2009).  "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## III.    ANALYSIS

### A.    The District's Municipal Liability for a Claim Under 42 U.S.C. § 1983.

The District's motion to dismiss Mpras's § 1983 constitutional claims relies on *Monell v.

Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), which holds that it is only when "a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury that the government as an entity is responsible

under § 1983." *Monell* remains the standard under which a municipality qualifies as a "person"

4

subject to suit under § 1983 for constitutional violations.  *E.g.*, *Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014) (applying *Monell* doctrine to the District of Columbia).

In determining whether Mpras has stated claims for municipal liability under § 1983, the Court must conduct a two-step inquiry.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)).  "First, the court must determine whether the complaint states a claim for a predicate constitutional violation." *Id*.  If Mpras has adequately pled a constitutional violation, the Court then considers "whether the complaint states a claim that a custom or policy of the municipality caused the violation."  *Id.* "Each inquiry is separate," *Id*. (citations omitted) and therefore the Court will first address whether Mpras sufficiently pled a predicate constitutional violation before moving on to the District's municipal liability.

### i.      A Claim for Municipal Liability Under 42 U.S.C. § 1983 Must be Predicated On an Injury to a Federal Right.

Section 1983 provides for a civil action against:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  "Section 1983 is not the source of substantive rights but rather 'a method for vindicating federal rights elsewhere conferred.'" *Blackman v. District of Columbia,* 456 F.3d 167, 177 (D.C. Cir. 2006) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Pitt v. District of Columbia,* 491 F.3d 494, 510 (D.C. Cir. 2007) (citing *Baker,* 443 U.S. at 144 n.3).  It follows that if a plaintiff has not sufficiently pled an injury to a federally conferred right, then the plaintiff cannot hold a municipality liable for an injury to that right under § 1983.  *See Graham v.*

*Connor,* 490 U.S. 386, 394 (1989) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged.") (quoting *Baker,* 443 U.S. at 140).

In Count I, Mpras alleges the District deprived him of a property interest in the photo identification described by subsection (d) of LEOSA.  Mpras, however, has not pled a federally conferred right to such a photographic identification.  Indeed, nothing in LEOSA bestows a federal right to the identification required by subsection (d).  *See, e.g. Johnson v. New York State Dept. of Corr. Servs.*, 709 F.Supp.2d 178, 184 (N.D.N.Y 2010) ("Nothing in the text or structure of the statute bestows either an explicit right to obtain the identification required under § 926C(d) or a *federal remedy* for a state agency's failure to issue such identification.") (emphasis in original).  Rather, "Congress expressly left the authority to issue the identification described in subsection (d) in the hands of the relevant state agency."  *Id.* (citing 18 U.S.C. § 926C(d)).  Subsection (d) contains numerous references to actions that must be performed and qualifications that must be determined "*by the agency* from which the individual retired" or "*by the State* in which the individual resides" or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers *within the State*" or "by any law enforcement agency *within that State*."  § 926C(d) (emphases added).

In enacting LEOSA, Congress clearly recognized the states' authority to establish their own firearm permit standards and make their own decisions whether to issue the photographic identification required by subsection (d).  *See, e.g.*, *Johnson*, 709 F.Supp.2d at 185–86 ("Rather than commandeer state officials by requiring them to issue the requisite identification under federal law, Congress has left this authority with the states.  Although LEOSA bars the criminal prosecution of qualified retired law enforcement officers who are in possession of the identification

6

required under subsection (d), the statute is devoid of any intent, either explicit or implicit, to impinge upon the states' authority to issue the identification in question."). Given Congress' deferral to the states to promulgate their own standards regarding the photographic identification contemplated by LEOSA, Mpras, who cites only to LEOSA, has not, and cannot plead any federally conferred right to the identification.

Mpras has also failed to allege a property interest under District of Columbia law in the LEOSA photo-identification card. For due process purposes, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it[;] . . . [h]e must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "Such entitlements are, of course . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id*. (citations and internal quotation marks omitted). Furthermore, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id*. (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989)).

Mpras has not alleged a legitimate claim of entitlement under District of Columbia law to the identification. Rather, he has enigmatically alleged that the MPD has "procedures for establishing eligibility and the issuance of photographic identification" (Compl. ¶ 21), but nowhere does he specify what these procedures are, allege that they were not followed, explain what the "requirements for eligibility" (*Id*. ¶ 22) are, or, most importantly, identify any District of Columbia authority providing him with a legitimate claim of entitlement to the identification. Indeed, he

7

pleads no information or facts whatsoever regarding any District practices, standards, policies, procedures, or rules for issuance of the photographic identifications.  Mpras also has not alleged anywhere in his Complaint that he actually requested a photographic identification from the District, let alone any facts related to such a request.  Having failed to allege a legitimate claim of entitlement to the photographic identification under District of Columbia law, Mpras cannot allege that any deprivation of such identification amounts to a violation of his procedural due process rights under the Fourteenth Amendment.

In Count II, captioned "Deprivation of a Liberty Interest," Mpras alleges that he "has a liberty interest established by the Second Amendment of the United States Constitution to bear arms for self[-]defense in confrontation" (*Id.* ¶ 26) and that "the deprivation of the photographic identification by the [MPD] has deprived the Plaintiff of his exercise of this liberty interest . . . ." (*Id.* ¶ 29).  Mpras has not alleged, however, a Second Amendment right to the photographic identification.  He has also not alleged that the District deprived him of his asserted Second Amendment right to "bear arms for self[-]defense in confrontation."  Indeed, Mpras alleges no facts related to a deprivation of any rights secured by the Second Amendment.  His only allegation is that the District deprived him of a photographic identification, but he has not pled any facts whatsoever to support this allegation.  Furthermore, he has not alleged, nor is the Court aware of, how the deprivation of a photographic identification alone implicates any violation of the Second Amendment.  Mpras, therefore, has neither pled a predicate Second Amendment constitutional violation to support a § 1983 claim, nor any facts to support one.

In Count III, captioned "Deprivation of Equal Protection Under the Law," Mpras appears to allege a Fourteenth Amendment violation[2] by invoking its equal protection clause.  (*Id.* ¶ 33) ("By Defendant depriving Plaintiff of his photographic identification without lawful cause, the Plaintiff has been denied equal protection of the laws.").  Mpras alleges that "[t]he Defendant has deprived the Plaintiff of his photographic identification while providing other similarly situated persons such photo identification." (*Id.* ¶ 31).  Nowhere in the Complaint, however, does Mpras allege any facts supporting this conclusory allegation.  For example, he offers no facts about who these other persons are or how they were similarly situated.  Furthermore, Mpras does not allege that he requested and was denied a photographic identification card; he merely asserts—again without factual support—that the District "deprived" him of it.  Because Mpras has alleged no facts to support Count III, this Count also fails to state a claim for a predicate constitutional violation.

Lastly, Mpras alleges defamation *per se* in Count IV.  Because Mpras has invoked the federal-question subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331[3] and grounds his entire suit in 42 U.S.C. § 1983, the Court can only entertain Count IV as pled as a section 1983 claim.[4]  Mpras's § 1983 defamation claim cannot survive Defendant's Motion to Dismiss because, as Defendant correctly asserts, Mpras has not pled that the alleged defamation was an injury to a federally conferred right (Mot. at 5 n.1).  Therefore, Count IV also fails the first step of the Court's § 1983 municipal liability inquiry under *Baker*.

---

[2] It appears that Mpras's Count III is rooted in the Fourteenth Amendment of the United States Constitution, although Mpras neither mentions nor cites to it.  The Court is therefore left to infer its invocation by Mpras's use of the phrase "equal protection under the law." (*See* Compl. ¶¶ 30–34 (Count III)).

[3] (Compl. ¶ 4).

[4] Mpras has not pled supplemental jurisdiction pursuant to 28 U.S.C. § 1367 or diversity jurisdiction under 28 U.S.C. § 1332 in order to confer federal jurisdiction over a common-law defamation claim.

All four Counts of Mpras's Complaint for § 1983 municipal liability fail to allege any predicate constitutional violations.  On this basis alone, the Court must grant Defendant's Motion. Even if Mpras's claims survived the first step of the *Baker* inquiry, however, they would not survive the second step.

### ii.     A Claim for Municipal Liability Under 42 U.S.C. § 1983 Must Plead that a Custom or Policy of the Municipality Caused the Violation

The second part of the two-step inquiry into § 1983 claims for municipal liability is "whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker*, 326 F.3d at 1306 (citing *Collins*, 503 U.S. at 120; *Monell*, 436 U.S. at 694).

This Circuit has repeatedly recognized the holding in *Monell*:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694; *see also Johnson v. Gov't of D.C.*, 734 F.3d 1194, 1199 (D.C. Cir. 2013); *Warren v. D.C.*, 353 F.3d 36, 39 (D.C. Cir. 2004) ("Causation would exist if, for instance, the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation.'") (quoting *Monell,* 436 U.S. at 694); *Baker v. District of Columbia*, 326 F.3d 1302, 1305–07 (D.C. Cir. 2003).

The law is well-defined and unambiguous: a plaintiff who hopes to survive a motion to dismiss when bringing § 1983 claims against the District must sufficiently plead a custom or policy that caused injury to the plaintiff.  *See Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) ("[t]here is . . . no disagreement over the appropriate standard for determining whether the District may be held liable.") (citing *Monell,* 436 U.S. at 694); *Triplett v. District of Columbia*,

108 F.3d 1450, 1453 (D.C. Cir. 1997) ("Under § 1983 a municipality is liable not under principles of *respondeat superior*, but only for constitutional torts arising from 'action pursuant to official municipal policy.'") (quoting *Monell,* 436 U.S. at 691).

Mpras's Complaint is devoid of any factual allegations that any custom or policy of the District was the moving force behind the alleged deprivation or that any final District policymaker was responsible for his injuries.  *See Harris v. District of Columbia*, 696 F. Supp. 2d 123, 129 (D.D.C. 2010) ("Plaintiff has failed to include any allegations whatsoever demonstrating how the individual actions cited in his Complaint constitute 'the official policy' of the District of Columbia.").  At best, Mpras alleges—without elaboration—that the "deprivation of equal protection of the laws was a direct result of an official policy of the District of Columbia government" (Compl. ¶ 34) and that "the District of Columbia, as an official policy and custom, maintains false and derogatory information in its official records of Plaintiff's employment" (*Id*. ¶ 36).  Mpras fails to allege any facts whatsoever to support these conclusory allegations. [5]

### B.    Mpras's Request for Declaratory and Injunctive Relief

Mpras asks the Court to order the District to issue him the photographic identification card required by the LEOSA.  Mpras, however, has not pled any claim to support such injunctive relief. He also asks the Court, pursuant to the Declaratory Judgment Act codified at 28 U.S.C. § 2201(a), to "declare the deprivation of his photographic identification and the attendant immunities of the [LEOSA] to be unlawful."  (Compl. ¶ 42).

---

[5] Mpras alleges in his Opposition that "the District is perpetuating a <u>deliberate</u> course of action to deprive otherwise qualified, but politically undesirable, persons of their Second Amendment rights."  (Opp'n at 1) (underline in original) Mpras footnotes this allegation by claiming he "has been directly involved in a great deal of litigation and administrative proceedings against, and critical of, the District of Columbia Government and Metropolitan Police Department."  (*Id.* n.1)  Mpras fails to allege any facts whatsoever in his Complaint, however, to support these contentions.

The Declaratory Judgment Act permits the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," provided there exists "a case of actual controversy within its jurisdiction."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act "is not an independent source of federal jurisdiction" and "the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers,* 363 U.S. 666, 677 (1960) (internal citation omitted)); *see also Marciano v. Shulman*, 795 F. Supp. 2d 35, 38 n.2 (D.D.C. 2011) (recognizing that the Declaratory Judgment Act creates only a remedy).  Because, as explained above, his Complaint fails to state a claim upon which relief can be granted, Mpras has not pled any cause of action or judicially remediable right and therefore his request for declaratory relief is also denied.

## IV.    CONCLUSION

For the reasons set forth herein, the Court finds that Mpras has failed to plead any claims under 42 U.S.C. § 1983 for municipal liability against the District of Columbia for the alleged deprivation of a LOESA photographic identification or the alleged defamation.  The District's Motion to Dismiss, therefore, is granted.  Accordingly, it is by the Court

**ORDERED** that Defendant the District of Columbia's Motion to Dismiss (ECF No. 5) is hereby **GRANTED**; and it is further

**ORDERED** that Plaintiff Emanuel Nikolaos Mpras's Complaint is hereby **DISMISSED**.


Date:  November 21, 2014


                                        *Tanya S. Chutkan*
                                        TANYA S. CHUTKAN
                                        United States District Judge